# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

CHRISTOPHER LYNN MCLENDON,

    Plaintiff,

VS.

OFFICER JOSH SMITH, and
OFFICER CLARK,

    Defendants.

**7 : 12-CV-154 (HL)**

## RECOMMENDATION

The Plaintiff filed this action pursuant to 42 U.S.C. § 1983 on November 19, 2012, raising allegations of excessive force and failure to intervene. Presently pending herein is the Defendants' Motion for Summary Judgment. (Doc. 13). The Court notified the Plaintiff of the filing of the Defendants' motion, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order. (Doc. 17). Plaintiff filed two (2) responses to the Defendants' motion, which included his affidavit testimony. (Docs. 18, 23).

## Background

Plaintiff's claims arise out of events occurring during his incarceration at the Thomas County Jail in October 2012. In his Complaint, the Plaintiff alleges that jail officer Defendant Smith sprayed him two times with pepper spray, after Plaintiff was ordered to segregation but attempted to explain his actions. Defendant Smith and other officers had ordered the inmates into their cells for the night, but Plaintiff either remained in or moved to the shower, allegedly telling Smith that he "just needed to wash the soap off my body and I was out". (Doc. 1, ¶ 13). When

Defendant Smith ordered Plaintiff to segregation for his failure to move into his cell when ordered to do so, Plaintiff tried to explain to Smith that he had been in the shower. Defendant Smith then sprayed Plaintiff two (2) times with the pepper spray. Plaintiff alleges that Defendant Officer Clark witnessed but did not intervene in the use of pepper spray by Defendant Smith. As a result of the pepper spray, Plaintiff maintains that he suffered burning eyes and skin, and depression.

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

As the party moving for summary judgment, the defendant has the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, including pleadings, discovery materials, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If a party fails to properly support an assertion of fact or fails to properly

address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it". Fed.R.Civ.P. 56(e)(3). The Defendants have supported their motion for summary judgment with Defendant Smith's affidavits and video evidence of the incident. (Docs. 16, 20, 22).

*Excessive force*

The Eighth Amendment forbids cruel and unusual punishment, and this prohibition governs "the treatment a prisoner receives in prison and conditions under which he is confined." *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). "[A]nalysis of an Eighth Amendment excessive force claim is contextual and requires that many factors be considered: 'the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'" *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (quoting *Hudson*, 503 U.S. at 5). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. " *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500 (11th Cir. 1985) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)), *abrogated on other grounds by Graham v. Connor*, 490 U.S. 386 (1989).

To establish a claim for excessive force, the Plaintiff must show that (1) the Defendants acted with a malicious and sadistic purpose to inflict harm and (2) that a more than *de minimis*

injury resulted. *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). The Supreme Court has clarified that "[t]he 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). Although the extent of any injury is not alone dispositive of an excessive force case, it is "one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321). In considering whether a jailer's use of force was excessive, the Eleventh Circuit considers the following specific factors: "(1) the need for the force; (2) the relationship between that need and the amount of force used; (3) the extent of the resulting injury; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).

In arguing that they are entitled to the entry of summary judgment in regard to the Plaintiff's claim of excessive force by Defendant Smith, the Defendants have submitted affidavits from Defendant Smith and a video recording of the incident underlying this lawsuit. (Docs. 16, 20, 22). In his affidavit testimony, Defendant Smith admits to using pepper spray against the Plaintiff on two (2) occasions on the night in question. Defendant Smith's testimony establishes that Plaintiff was out of his cell at a time when the inmates had been ordered to their cells for lock-down, and that Plaintiff failed to comply with Smith's further order to take his things to isolated confinement. In an effort to gain control of the Plaintiff, Defendant Smith sprayed Plaintiff with pepper spray on two (2) occasions, with Plaintiff swiping at the Defendant after the

4

first use.   Plaintiff was then taken to the showers by Defendant Clark to wash off the pepper spray

and thereby decontaminate him from the effects of the spray.   Smith states that

> On the night in question, co-defendant Cameron Clark ("Clark") and I were the only two detention officers working in the B-Pod of the Jail, which is the wing of the Jail that houses convicted and accused felons.   Plaintiff was a pre-trial detainee awaiting trial on charges of child molestation. . . Routinely, during each night at the Jail, multiple lock-down warnings are given to inmates by methods of the jail guards' [sic] flashing of the dorm lights and audible intercom announcements. . . Inmates at the Jail are made aware that a failure to obey a lock-down order can result in immediate solitary confinement.
>
> On the night in question, the door to Plaintiff's cell . . . was incapable of closing as well as a cell door on the top level.   Each of those cells housed three inmates; therefore, at least six inmates were capable of exiting their cells in dorm B-3 during the events in question.   This did not, however, excuse the inmates from compliance with lock-down.

(Doc. 16, ¶¶ 5-8).

The Defendants inspected the showers and both levels of the dorm and did not observe any inmates

in the shower areas.   Defendant Smith did not observe Plaintiff out of his cell.   While inspecting

the top level, the Defendants observed Plaintiff moving from the shower area to his cell.   *Id.* at ¶¶

9-11.   Defendant Smith instructed the Plaintiff to

> roll up his sleep mat, which meant that Plaintiff was being ordered to go to isolated confinement    . . . Plaintiff could be heard inside the cell remarking he was not going to isolate confinement.   As I approached cell 7, I stated to Plaintiff, "C'mon you know the rules; get your stuff." - or words to that effect.   At first, Plaintiff initially responded from within his cell in a calm manner, but was still refusing to go to isolated confinement as I had instructed.

5

*Id.* at ¶¶ 12-16.

However, Plaintiff became increasingly upset and

> approached the cell door in an aggressive manner. . . Plaintiff became more angry; he exited the cell; he approached even closer to Clark and I; he became animated with his arms and hands; he raised his voice in his continued refusals, he was cursing, and he further exhibited an aggressive demeanor. As Plaintiff's anger escalated toward me, I pulled my pepper spray from its holster. I pointed the pepper spray toward Plaintiff and he straightened his arm toward the pepper spray in a stiff-arm motion. I sprayed the pepper spray, and it made contact with Plaintiff's neck and upper chest area. The spray was ineffective to deter Plaintiff's aggressive demeanor. The pepper spray remained drawn from its holster, and I pointed it at Plaintiff who tried to swat at it and made contact with me. I was able to pull my arm away and sprayed Plaintiff across the forehead with the pepper spray. That burst of spray stopped Plaintiff, and Clark used the break in the action to intervene.

*Id.* at ¶¶ 17 – 23.

Plaintiff was taken to the shower to decontaminate himself, was instructed regarding decontamination, and was given access to a shower in isolated confinement. *Id.* at ¶¶ 24-27.

Significant portions of the affidavit testimony of Defendant Smith are corroborated by the video evidence he has submitted, and no portion of his affidavit appears to be refuted by the video evidence. Defendant Smith's affidavit testimony establishes, and the Plaintiff does not refute, that the video depicts the Plaintiff and the Defendants during the incident underlyling this lawsuit. (Docs. 20, 22). Although containing only visual images with no audio, the video does show the inmate identified as the Plaintiff in a conversation with the officers at his cell door, the Plaintiff becoming increasingly agitated, waving his arms and moving towards the officers, and Plaintiff knocking or hitting at the officer with the pepper spray. (Doc. 22). The video evidence also establishes that the Plaintiff is not moving towards segregation with his belongings, but is engaging in a discussion with the officers. *Id.* The video shows that the Plaintiff was

immediately taken away from the area, and the other inmates were removed from the cell. *Id.* The video also shows that certain cell doors remained open, and certain inmates were out of their cells during this period of time. *Id.*

In his affidavit, the Plaintiff states that he "did not act in an aggressive manner towards Josh Smith . . . did not become animated with my arms and hands . . . did not raise my voice or refuse to go to isolated confinement . . . was not cursing . . . did not exhibit an aggressive demeanor . . . [and] was not in any way combative with Officer Smith. . . I was compliant." (Doc. 18).

It is undisputed that Plaintiff did not immediately comply with Defendant Smith's orders to go to his cell for lockdown and to move to segregation, and that Defendant Smith pepper sprayed the Plaintiff two (2) times. Although Plaintiff states in his affidavit that he "was compliant", his Complaint makes it clear that he did not immediately comply with the directive to lock down, but insisted on staying or going into the shower and then explaining to the Defendants why he should not go to isolated confinement. Plaintiff states

> Officer Smith came in the Dorm and said that if your cell door rolls you need to be in it. **I explained that my door was broken and that I just needed to wash the soap off my body and I was out, while I was in the shower.** Officer Smith went up stairs in the dorm **to make sure everyone was locked down** and came back to my cell, which is cell-7 and told me to roll my shit up and I was going to the hole. **I explained that I got out [sic] the shower**.

(Doc. 1, ¶ 13, emphasis added).

Furthermore, Defendant Smith's affidavit testimony (coupled with the video evidence of the incident) establishes that the Plaintiff did not immediately comply with the directive to go to isolated confinement.

Although Plaintiff continues to argue that his actions were not violently or physically

7

resistant to Smith's orders and that the use of pepper spray therefore was excessive under the circumstances, the need for the use of force was established by Plaintiff's refusals to comply with officers' orders. As in *Sanchez v. McCray*, 349 Fed.Appx. 479 (11th Cir. 2009), it is clear from Plaintiff's Complaint and affidavits that he refused to comply with the Defendant's orders. In his second affidavit, a response to Defendant Smith's second affidavit, the Plaintiff states that at the beginning of the altercation, he was "in the cell *as instructed*", and "got out of the shower *as he [Officer Smith] instructed*", thus corroborating Defendant Smith's testimony regarding Plaintiff's initial violation of lock-down warnings. (Doc. 23, p.1; Doc. 16, ¶ 7). Defendant Smith's subsequent use of pepper spray "in order to gain control of [the inmate] and force him to comply with [his] orders" is not excessive force. Rather than comply with the initial directives to go to his cell for lock-down, and the subsequent directive to move to isolated confinement, Plaintiff attempted to explain why he was absent from his cell and why he should not be put into isolated confinement. *See* Docs. 1, 18, and 23.

"Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). "Pepper spray is an accepted non-lethal means of controlling unruly inmates." *Danley*, 540 F.3d at 1307. "And prison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly they are not required to do so where an inmate repeatedly fails to follow those orders." *Id.* Thus, the need for the use of force, the first factor to be considered in the excessive force analysis, was established "by the undisputed evidence that [the inmate] created a disturbance." *Bennett*, 898 F.2d at 1533.

The second factor to be considered, the relationship between the need for force and the

8

amount of force used, weighs against a finding of a constitutional violation, as "[a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." *Danley*, 540 F.3d at 1307 *citing Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002 ("Courts have consistently concluded that using pepper spray is reasonable . . . where the plaintiff was . . . refusing police requests."). Plaintiff had clearly not stopped resisting the Defendants' efforts to control him after the first pepper spray, as he swung out at Defendant Smith and attempted to move Smith back. *Cf. Danley*, 540 F.3d at 1309 ("Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need."); *Nasseri v. City of Athens*, 373 Fed.Appx. 15, 18 (11th Cir. 2010) (use of pepper spray against inmate struggling with officer was permissible use of force); *Sanchez v. McCray*, 349 Fed.Appx. 479, 483 (11th Cir. 2009) (use of pepper spray against inmate who refused to comply with officers' orders was permissible use of force.).

In regard to the issue of resulting injury, there is no medical evidence before the Court regarding the extent of any injury to the Plaintiff or medical treatment he received as a result of the use of pepper spray. "Any injuries or discomfort [Plaintiff] suffered as a necessary result of a dose of pepper spray were neither substantial nor long lasting", as pepper spray "is designed to disable a suspect without causing permanent physical injury." *Danley*, 540 F.3d at 1308.

It is also undisputed that several cells were unable to be physically closed and locked, leaving the officers with open cells and at least two (2) inmates out of their cells, as evidenced by the video evidence, after Defendants issued the lockdown order. Thus, the fourth excessive force factor weighs against finding a constitutional violation, as the extent of the threat reasonably perceived by the officers on the basis of facts known to them, including an inmate refusing to comply with orders and other inmates out of or able to exit their cells, would reasonably permit the

9

use of some force in response.

Fifth and finally, Defendant Smith's use of the pepper spray instead of physical contact with the Plaintiff's person evidences an attempt to temper the use of force response. "[T]he initial use of pepper spray is not necessarily a constitutional violation. . . [and] does not cause any substantial or long-lasting injury . . . [as] a very reasonable alternative to escalating a physical struggle." *Nasseri*, 373 Fed.Appx. at 20. Guards are "permitted to use some force in controlling the situation and preventing it from escalating." *Id.*

As in *Vicks v. Knight*, 380 Fed.Appx. 847 (11th Cir. 2010), where that plaintiff presented no evidence of excessive force beyond his own affidavit, this Plaintiff has presented no evidence beyond the bare assertions of his Complaint, repeated in his affidavits, to establish Defendant Smith's excessive use of force and Defendant Clark's failure to intervene therein. *Vicks*, 380 Fed.Appx. at 852; *Smith v. Sec'y., Dep't. of Corrections*, 2013 WL 3838090 (11th Cir. July 26, 2013) (defendants entitled to summary judgment on excessive force claim; prisoner did not rebut defendants' summary judgment showing by designation of specific facts beyond the pleadings; record supported finding that prisoner suffered only minor swelling as a result of alleged use of force). *Cf. Logan v. Smith*, 439 Fed.Appx. 798 (11th Cir. 2011) (entry of summary judgment not appropriate in excessive force case wherein evidence suggested some level of injury to the plaintiff, no reliable medical evaluation had been conducted, and Plaintiff presented his own affidavit and affidavits of other individuals testifying to use of force). Here, "[Plaintiff's] version of events . . . was contradicted by all of the relevant evidence, with the exception of his own [statement of claim in the Complaint and affidavits] . . . and thus [a reasonable jury] could not reasonably infer that [Defendant Smith] used anything more than a *de minimis* amount of force against [the Plaintiff]." *Vicks*, 380 Fed.Appx. at 852.

*Failure to intervene*

In regard to Plaintiff's claim that Defendant Clark was deliberately indifferent based on his alleged failure to intervene in or stop the altercation earlier between Plaintiff and Defendant Smith, he has failed to set forth adequate facts to establish such a claim.

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. . . . However, in order for liability to attach, the officers must have been in a position to intervene."  *Terry v. Bailey*, 376 Fed.Appx. 894, 896 (11th Cir. 2010) (*citing Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). An officer who fails to intervene in a fight between inmates can only be held liable if he "was physically able and had a realistic chance to intervene and act in time to protect the inmate Plaintiff."  *Glispy v. Raymond*, 2009 WL 2762636 (S.D.Fla. Aug. 28, 2009) (*citing Ensley*, 142 F.3d at 1407; *Byrd v. Clark*, 783 F.2d 1002 (11th Cir. 1986)).

However, if no excessive use of force takes place, an officer has no duty to intervene. *Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009); *Vicks*, 380 Fed.Appx. at 852; *McBride v. Rivers*, 170 Fed.Appx. 648, 658 (11th Cir. 2006) (defendant could not be liable for failing to intervene after court determined no excessive force had been used).   Inasmuch as the Court has concluded that no reasonable jury could find that Defendant Smith used excessive force against the Plaintiff, no reasonable jury could find that Defendant Clark was liable for failing to intervene.

## Conclusion

Inasmuch as the Plaintiff has failed to sufficiently rebut the Defendants' summary judgment showing regarding Plaintiff's excessive force and failure to intervene claims, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment be

11

**GRANTED.** Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 24th day of January, 2014.

> s/ *THOMAS Q. LANGSTAFF*
>
> **UNITED STATES MAGISTRATE JUDGE**

asb